Stephanie I. Sprecher WSB #6-2988
Assistant United States Attorney
District of Wyoming
P.O. Box 22211
Casper, WY 82602-5010
307-261-5434 (phone)
307-261-5471 (fax)
stephanie.sprecher@usdoj.gov

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF WYOMING



**FILED**

*1:24 pm, 2/18/22*

**Margaret Botkins
Clerk of Court**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>**Real Property located at: Lot 9 of Debusk Estates Subdivision, Greene County, Greeneville, Tennessee,**<br><br>Defendant-Property. | Case No. 22-CV-36-KHR<br><br>**VERIFIED COMPLAINT FOR FORFEITURE *IN REM*** |

### VERIFIED COMPLAINT FOR FORFEITURE *IN REM*

The United States of America, by and through Assistant United States Attorney Stephanie A. Hambrick, brings this verified complaint in compliance with Supplemental Rule G(2) of the Federal Rules of Civil Procedure and 18 U.S.C. § 985.

This is a civil *in rem* action to forfeit real property to the United States **(1)** under 21 U.S.C. § 881(a)(6), as proceeds of and traceable to unlawful sales of controlled substances, **2)** under 21 U.S.C. § 881(a)(7), as real property used to commit, or facilitate the commission of unlawful sales of controlled substances **(3)** under 18 U.S.C. § 981(a)(1)(A) as real property involved in and traceable to money laundering; and **(4)** under 18 U.S.C. § 981(a)(1)(C) as property constituting,

derived from, and traceable to proceeds of the unlawful distribution of a controlled substance and conspiracy to distribute a controlled substance.

## JURISDICTION AND VENUE

This Court has subject-matter jurisdiction under 28 U.S.C. § 1345 because this action is being commenced by the United States, and under 28 U.S.C. § 1355(a) because this is a civil forfeiture action.

This Court has *in rem* jurisdiction over the Defendant-Property under 28 U.S.C. § 1355(b) because acts or omissions giving rise to the forfeiture occurred in this district. Venue is proper in this Court under the same authorities and for the same reasons.

## THE DEFENDANT *IN REM*

1. The Defendant-Property consists of the following real property with all appurtenances, improvements, and attachments thereon:

   > **a) Lot 9 of Debusk Estates:** *Situate in the 9th Civil District of Greene County, Tennessee, and being Lot No. 9 of Debusk Estates (a redivision of Lots 3 and 4 of the Burkey Property), a plat of which is found of records in Plat Cabinet J, Slide 108, Register's Office for Greene County, Tennessee, to which reference is here made for a more complete description.*
   >
   > *Being the same property conveyed to John T. Seaton by Quitclaim Deed of Jeffrey Fillers Homes LLC, dated June 21, 2018, and which is of record in Deed Book 604A, page 2073, in the Register's Office for Greene County, Tennessee.*
   >
   > The record owner of this property is Mark Titre. John T. Seaton conveyed this property to Mark Titre by Quitclaim Deed on April 17, 2019. There is no lien on this property.

2. The Defendant-Property has not been seized and the United States does not request authority from the Court to seize the Defendant-Property at this time. Instead of seizing the property, the United States will, as provided by 18 U.S.C. § 985(b)(1) and (c)(1):

   a. post notice of this action and a copy of the Complaint on the defendant real property;

  b.  serve notice of this action on each record property owner of each Defendant-Property, and any other person or entity who may claim an interest in that real property, along with a copy of this Complaint; and

  c.  file a Lis Pendens against the Defendant-Property.

## LEGAL BASIS FOR FORFEITURE

3. Title 21, United States Code, Section 881(a)(6) authorizes the civil forfeiture of "[a]ll moneys, negotiable instruments, securities, or other things of value furnished or intended to be furnished by any person in exchange for a controlled substance or listed chemical in violation of this subchapter, all proceeds traceable to such an exchange, and all moneys, negotiable instruments, and securities used or intended to be used to facilitate any violation of this subchapter [21 U.S.C. Subchapter I, §§ 801-904]." The United States alleges that the Defendant-Property is subject to forfeiture under § 881(a)(6) because the property constitutes the proceeds of, and is traceable to, unlawful sales of controlled substances in violation of 21 U.S.C. §§ 841 and 846.

4. Title 21, United States Code, Section 881(a)(7), authorizes the civil forfeiture of "[a]ll real property, including any right, title, and interest (including any leasehold interest) in the whole of any lot or tract of land and any appurtenances or improvements, which is used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of, a violation of this subchapter [21 U.S.C. Subchapter I, §§ 801-904] punishable by more than one year's imprisonment.

5. The United States alleges that the Defendant-Property is subject to forfeiture under § 881(a)(7) because the property is used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of violations of 21 U.S.C. §§ 841 and 846.

6. Title 18, United States Code, Section 981(a)(1)(A) authorizes the civil forfeiture of "[a]ny property, real or personal, involved in a transaction or attempted transaction in violation of section

1956, 1957 or 1960 of this title, or any property traceable to such property." The United States alleges that the Defendant-Property is subject to forfeiture under § 981(a)(1)(A) because the property was involved in, and traceable to, money laundering in violation of 18 U.S.C. §§ 1956.

7. Title 18, United States Code, § 981(a)(C) authorizes the civil forfeiture of "[a]ny property, real or personal, which constitutes or is derived from proceeds traceable to a violation of … any offense constituting 'specified unlawful activity' (as defined in section 1956(c)(7) of this title), or a conspiracy to commit such offense." In turn, § 1956(c)(7) incorporates the offenses listed in 18 U.S.C. § 1961(1). Thus, illegal drug distribution is a specified unlawful activity as defined in §§ 1956(c)(7)(D) and 1961(1)(D); drug conspiracy is a specified unlawful activity under § 1961(1)(D).

## BACKGROUND OF INVESTIGATION

8. Bryan JONES (JONES) has been engaged in the unlawful distribution of marijuana since at least 2011. JONES has used at least three properties in Oregon to grow marijuana. He distributes the marijuana to locations across the country, including Wyoming and New York. For years, JONES' primary buyer in New York was Byron Hills (Hills). Hills was known to law enforcement in the Albany, New York, area as a large-scale marijuana trafficker. According to a confidential source (hereinafter CS1), Hills met with JONES in Oregon in April 2015. Hills was again observed meeting with JONES in January 2018 and March 2018. Hills was interviewed by law enforcement officers on May 7, 2018. Hills committed suicide a few days later.

9. Jeffrey Ahrens (Ahrens) used to own a property in Williams, Oregon, where he grew marijuana. Starting around 2011, JONES began buying the bulk of Ahrens's marijuana crop—usually over 100 pounds of marijuana each year. JONES would then sell this marijuana to Hills. In 2013, JONES paid Ahrens $150,000 cash to become his partner. This meant that they would split the marijuana crop on Ahrens's farm evenly.

10. Ahrens carried marijuana and/or cash proceeds to and from New York for JONES on two occasions. On the second trip, in February 2014, Ahrens was arrested by the Lancaster County Nebraska Sheriff's Office after they discovered over $189,000 cash in his vehicle. Ahrens admitted to law enforcement officers that $126,000 of the cash was being transported to JONES, as it was JONES' portion of proceeds from marijuana sales. Ahrens stated JONES was his business partner; JONES finds buyers for their marijuana. Ahrens was returning to Oregon after transporting 37 pounds of marijuana to Albany, New York.

11. In December 2015, Bruce Latorre (Latorre) was contacted by law enforcement officers at the airport in Evanston, Wyoming. Latorre was refueling his aircraft. After being given consent to search his aircraft, investigators discovered cash totaling approximately $519,000 in the aircraft. Latorre told investigators that he routinely flew money back from New York to JONES, and the money he transported for JONES was tied to JONES' marijuana sales.

12. On October 1, 2019, investigators conducted a proffer of a Christopher Rowan (Rowan) in Albany, New York. Rowan allowed Hills to store large drums containing marijuana on his property. According to Rowan, JONES transported bulk cash from New York by concealing it in cars or trucks. These vehicles were then loaded onto a trailer by a driver for "Appalachian" (known by investigators to be Appalachian Xpress). According to Rowan, Appalachian picked up about six vehicles with marijuana proceeds hidden inside them.

13. JONES was sending proceeds from his marijuana sales to his brother-in-law, Jeffrey FILLERS (FILLERS). FILLERS, who lives near St. Louis, Missouri, helped JONES launder these proceeds. On or about November 15, 2018, JONES and Mark Titre (Titre) had an unrecorded phone conversation where they discussed ways for Titre to launder money from the sale of marijuana. JONES told Titre that JONES laundered his marijuana proceeds through buying and selling real estate. Specifically, JONES uses marijuana proceeds to build a home on a lot in

Tennessee he gets from his "deed guy." (The "deed guy" was subsequently identified by law enforcement as FILLERS.) Once the home build is complete, JONES sells the home. The money he gets from the sale of the home is clean. In subsequent emails, JONES told Titre that Titre could buy one of the lots for $30,000.

14. From January 2014 to May 2019, FILLERS deposited cash into his bank accounts totaling approximately $823,000. FILLERS received legitimate earnings from Network Technology Partners, Watermark Forensic Services, and Blackberry Corporation via check or direct deposit. FILLERS's cash deposits are believed to be proceeds of JONES' unlawful drug distribution, as no other source of cash income for FILLERS has been identified.

**Defendant-Property Lot 9 of Debusk Estates:**

15. On or about August 24, 2012, FILLERS acquired the Debusk Estates property from Jackie Seaton and Melba Seaton. On that date, Jackie and Melba Seaton filed a quitclaim deed with the property assessor of Greene County, Tennessee. This deed transferred all Jackie and Melba Seaton's rights, title and interest in the Debusk Estates property to JEFFREY FILLERS HOMES, LLC (FILLERS HOMES). In exchange, FILLERS paid the Seatons cash in the amount of $65,000. On August 31, 2012, Jackie Seaton deposited cash in the amount of $64,000 into his account at Heritage Community Bank.

16. After acquiring the Debusk Estates property, FILLERS sub-divided it into 12 lots. FILLERS has since improved and sold three of the lots. FILLERS transferred several of the unimproved lots, including Lot 9, to John Seaton via Quitclaim deed. John Seaton is FILLERS' builder and the son of Jackie Seaton. FILLERS told Titre on April 16, 2019, that he puts the lots in John Seaton's name so that John Seaton can build on them.

17. Investigators know that FILLERS is involved in laundering SUA proceeds for JONES using the Debusk Estates property. In communications between JONES and Titre in November

2018, JONES explained that he launders his drug proceeds by buying and selling real property in Tennessee using his "deed guy" aka FILLERS in St. Louis. JONES then builds a house on the lot and sells the property. The proceeds from the sale of the property appear to be legitimate capital gains.

18. In February 2019, Titre communicated with JONES via email. At the direction of the United States, Titre told JONES he was interested in purchasing a parcel of land in Tennessee for the purpose of laundering funds purportedly obtained from the sale of marijuana. JONES instructed Titre to wire the funds to a bank account (Subject Account) held in the name of FILLERS HOMES and controlled by FILLERS. These communications indicate that transactions involving the Defendant-Property is being conducted to conceal the nature and source of drug proceeds, in violation of 18 U.S.C. 1956(a)(1)(B)(i).

19. On March 4, 2019, the United States provided Titre with $5,000 and directed Titre to send those funds to the Subject Account via wire transfer, per JONES' instructions. Titre completed this wire transfer on the same date. On March 18, 2019, the United States provided Titre with another $5,000 and directed Titre to send those funds to the Subject Account via wire transfer, per JONES' instructions. Titre completed this wire transfer on the same date.

20. Subsequent to the March 18, 2019, wire transfer, Titre communicated to JONES that Titre had $20,000 in drug proceeds that Titre wanted to deliver directly to the JONES' "deed guy" in St. Louis, Missouri. JONES agreed to this meeting between Titre and the "deed guy."

21. On April 16, 2019, Titre met with FILLERS in Eureka, Missouri, and provided FILLERS with $15,000 that Titre represented as proceeds from the sale of marijuana.[1] This was to be the final payment for Titre's purchase of Lot 9. During the recorded meeting between Titre and

---

[1] The government provided Titre with $20,000 to give to FILLERS. However, at JONES' request, Titre provided JONES with $5,000 of the $20,000 prior to meeting with FILLERS.

FILLERS, FILLERS discussed being in the marijuana business with JONES and detailed the scheme to launder their marijuana proceeds through the buying and selling of real property located in Tennessee. Specifically, FILLERS told Titre that Titre would receive a deed to one of the lots in Tennessee. The deed will be from Seaton Contracting (John Seaton), whom FILLERS uses to build houses on the lots in the Debusk Estates subdivision. After Titre's house in Tennessee is built and sold, Titre will receive a check. FILLERS told Titre to be prepared to pay taxes on that money, "but you are more about cleaning the money." FILLERS also told Titre that he plans to continue to launder proceeds by building houses in his subdivision until the subdivision is completed. After that, FILLERS plans to keep buying plots of land and building houses on them. FILLERS and JONES are using the lots in Debusk Estates, including the Defendant-Property, to facilitate the crime of money laundering.

22. A few weeks after Titre met with FILLERS, Titre received a notarized quitclaim deed signed by John Seaton. This quitclaim deed transferred ownership of the Defendant-Property from John Seaton to Titre.

23. On January 8, 2020, investigators interviewed John Seaton in Greeneville, Tennessee. John Seaton confirmed that he built three houses for FILLERS. FILLERS paid for all costs of the build with cash. FILLERS paid for materials directly about 30% of the time. For the remaining expenses, especially the larger expenses, John Seaton would pay them with a check and FILLERS would later reimburse him with cash. John Seaton told investigators that FILLERS contacted him in early 2019 and told him that he sold Lot 9 and a future build could be anticipated. FILLERS directed John Seaton to transfer ownership of Lot 9 (the Defendant-Property) to Titre.

24. Because the Defendant-Property was used to launder purported SUA proceeds, in violation of 18 U.S.C. §1956(a)(3), there is probable cause to believe that this property is tied to and involved in money laundering.

**REQUEST FOR RELIEF**

By reason of the facts set forth and incorporated herein, the Defendant-Property is properly forfeitable to the United States **(1)** under 21 U.S.C. § 881(a)(6) as proceeds of and traceable to unlawful sales of controlled substances; **2)** under 21 U.S.C. § 881(a)(7), as real property used to commit, or facilitate the commission of unlawful sales of controlled substances **(3)** under 18 U.S.C. § 981(a)(1)(A) as real property involved in and traceable to money laundering; and **(4)** under 18 U.S.C. § 981(a)(1)(C) as property constituting, derived from, and traceable to proceeds of the unlawful distribution of a controlled substance and conspiracy to distribute a controlled substance. Wherefore, pursuant to 18 U.S.C. § 985, the United States, as Plaintiff, respectfully requests the following:

a. That notice of this action be given to all persons who reasonably appear to be potential claimants of interests in the property;

b. the Defendant-Property be forfeited and condemned to the United States of America;

c. the Plaintiff be awarded its costs and disbursements in this action;

d. the Court order any such other and further relief as this Court deems proper and just.

**DATED** this 15th day of February, 2022.

Respectfully submitted,

L. ROBERT MURRAY
United States Attorney

By: *Stephanie I. Sprecher*
STEPHANIE I. SPRECHER
Assistant United States Attorney

## **VERIFICATION**

I am a Special Agent of the Internal Revenue Service, Criminal Investigation, and have been so employed since 2014. As a special agent, my duties are to investigate potential violations of Internal Revenue laws under Title 26 of the United States Code and other related offenses under Titles 18 and 31 of the United States Code.

I have read the contents of the foregoing Complaint for Forfeiture *in rem* and verify under penalty of perjury pursuant to 28 U.S.C. § 1746 that the statements contained therein are true and correct to the best of my knowledge and belief.

Executed on this __15th____ day of February, 2022.

_____
JAKE RICE, Special Agent
Internal Revenue Service-Criminal Investigation